IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


AARON MICHAEL SHEETS                                              PLAINTIFF

v.                              Civil No. 5:24-cv-05073-TLB-CDC

DETECTIVE JOHN MACKEY;
DETECTIVE GUILLERMO SANCHEZ;
DETECTIVE MORGAN ABERNATHY; and
DETECTIVE JOSH COOKINHAM                                          DEFENDANTS


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendants' Motion for Summary Judgment (ECF No. 50) is before the Court for consideration. Plaintiff has responded (ECF No. 57) and Defendant has replied. (ECF No. 60). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011), United States District Judge Timothy L. Brooks referred the motion to the undersigned for the purpose of making a Report and Recommendation. For the reasons stated herein, the undersigned recommends Defendants' Motion be granted and Plaintiff's Complaint dismissed with prejudice.

### I.    PROCEDURAL BACKGROUND

Plaintiff filed his original Complaint and Motion to Proceed *in forma pauperis* ("IFP Motion") on March 27, 2024. (ECF Nos. 1, 2). Plaintiff's IFP Motion was granted the same day. (ECF No. 3). As Plaintiff is subject to the Prison Litigation Reform Act, Plaintiff's Complaint was screened pursuant to 28 U.S.C. § 1915A(a). (ECF No. 8). Plaintiff alleged seven claims in his Complaint including both individual and official capacity claims against all Defendants. (ECF

No. 1).  United States District Judge P.K. Holmes, III[1] dismissed all of Plaintiff's claims at screening except Claims One, Two, and Five, alleged against all Defendants in their individual capacities only.  (ECF No. 17).  The task having been simplified, the undersigned enumerates only the facts relating to Plaintiff's individual capacity Claims One, Two, and Five.

While Plaintiff is currently incarcerated in the Forrest City Low Federal Correctional Institution in Forrest City, Arkansas, his claims arose from Plaintiff's arrest in Madison County, Arkansas on February 17, 2023.  (ECF No. 1).  Plaintiff's Complaint names four (4) Defendants: John Mackey, Detective with the Fourth Judicial Drug Task Force in Washington County; Guillermo Sanchez, Detective with the Fourth Judicial Drug Task Force in Washington County; Morgan Abernathy, Detective with the Fourth Judicial Drug Task Force in Washington County; and Josh Cookinham, Detective with the Benton County Drug Task Force.  (ECF No. 1, p. 2-3).

In Claim One, Plaintiff alleges his Fourth Amendment rights were violated by all Defendants when they conducted a warrantless search of his girlfriend's residence on February 17, 2023.  Specifically, Plaintiff claims:

> On 2-17-23 Det. Mackey, Det. Cookinham, Det. Sanchez, and Det. Abernathy walked into a private home that was not the plaintiff's registered parole address.  The Fayetteville Probation and Parole Office have verified that the plaintiff's registered parole address at the time of his arrest was 18218 clearwater rd. in Fayetteville, Arkansas, not 40974 HWY 23 in Huntsville, Arkansas.  The parole office has also verified that the plaintiff told his parole officer that he was looking for a place to live in Huntsville, AR., his parole officer told him to notify him when he has an address.  The plaintiff never gave his parole officer the address where he was arrested.  The plaintiff was also on annual supervision and had just seen his parole officer on 12-1-22, his next office visit wasn't until 12-1-23.  The officers did not knock or gain consent to enter the private home.  They just walked in.  When the officers came into the home, the plaintiff was in the living room.  The plaintiff was only an overnight guest at his girlfriend's house and should not have been solely responsible for the contraband found in a back bedroom.  The plaintiff agrees he is on parole and has a search waiver on file.  If the officers were there to arrest him for a crime, he already committed than they should've had an arrest warrant for him.  Came to the

---

[1] The Honorable P.K. Holmes, III was originally assigned to this case; the case was reassigned to Judge Brooks on August 12, 2024.  (ECF No. 19).

house, knocked, and gained consent.  Then placed the plaintiff under arrest and left.  The officers never gained consent to enter the private home or search the entire house.  The plaintiff also claims there were three other adults at the house, but only he was the only one arrested for the contraband found.

(ECF No. 1, pp. 4-5) (errors in original).

In Claim Two, Plaintiff similarly alleges Defendants violated his Fourth Amendment rights

with their illegal search and seizure:

On 2-17-23 Det. Mackey, Det. Cookinham, Det. Sanchez, and Det. Abernathy walked into a private home claiming it was the plaintiff's parole address.  Once the officers placed the plaintiff in handcuffs, the officers began to search the entire house without getting consent from anyone at the house.  The plaintiff was in the living room when the officers walked into the house.  The plaintiff was only an overnight guest at his girlfriend's house.  The plaintiff had no contraband or large amounts of money on him when officers arrested him.  The plaintiff showed no proof of either physical or constructive possession over the contraband found in the back bedroom where another individual was at with the door closed. The officers asked multiple times "where the rest of the dope was," the plaintiff told them "I don't know I don't liver here."  The plaintiff then asked his girlfriend to get his wallet and call attorney Kim Webber on speaker phone.  When Kim answered the phone, the plaintiff told her that "the DTF just walked into his girlfriend's house without a warrant and they searched the house and found drugs and that the officers were saying that all the drugs were his."  This clearly establishes that the illegal search of the private home was being conducted.  Leaving circumstantial evidence found as the reason to arrest the plaintiff.

(ECF No. 1, pp. 6-8) (errors in original).

In Claim Five, Plaintiff alleges all Defendants conspired to violate his Fourth Amendment

rights by illegally searching his girlfriend's home and arresting him without a warrant.[2]  (ECF No.

1, pp. 14-16).

---

[2] While Plaintiff's Claims One, Two, and Five might be liberally construed to assert not only illegal search and seizure claims but also claims for illegal arrest, the Court notes in Plaintiff's Complaint he made a separate and distinct claim challenging his arrest – Claim Three. This Claim was dismissed at screening for failure to state a claim as a matter of law.  (ECF Nos. 8, 17).  The claims that survived the screening procedure were clearly identified only as illegal search and seizure claims which meet the exceptions of *Heck v. Humphrey,* 512 U.S. 477 (1994). *Id.*  Therefore, the Court will not resurrect any illegal arrest claims on summary judgment even though Plaintiff attempts to re-argue such claims in his pleadings. *See Gander Mountain Co. v. Cabela's, Inc.* 540 F.3d 827, 830 (8th Cir. 2008) (the law-of-the-case doctrine "requires courts to adhere to decisions

On February 6, 2025, Defendants filed their joint Motion for Summary Judgment and supporting documents. (ECF Nos. 50, 51, & 52). Defendants argue they did not violate Plaintiff's Fourth Amendment rights because at the time of the search, he was a parolee from the State of Arkansas with a significantly curtailed expectation of privacy. (ECF No. 51, p. 8). Specifically, Defendants rely on Plaintiff's warrantless search waiver on file with the Arkansas Division of Corrections (hereinafter "Search Waiver") as authorization to search the home, located at 4097 HWY 23, Huntsville, Arkansas (hereinafter "HWY 23 Home"), which Defendants believed to be Plaintiff's residence on February 17, 2023. *Id.* at 10-11. Defendants next argue Plaintiff's seizure with handcuffs was legal as they were in possession of reliable information that Plaintiff possessed weapons inside the girlfriend's home. *Id.* at 12. Third, Defendants argue Plaintiff failed to state a claim for conspiracy under Section 1983 and does not evidence to establish the elements of a § 1983 conspiracy claim. Specifically, Defendants argue Plaintiff has failed to establish a constitutional violation, and therefore, cannot establish the existence of a conspiracy to commit any such violation.[3] *Id.* at 13.

On March 18, 2025, Plaintiff responded to Defendants' Motion arguing Defendants illegally searched his girlfriend's house where he stayed the night "on occasion," and that they conspired to commit this constitutional violation against him. (ECF No. 58, p. 1). Plaintiff first argues that the standard for summary judgment is the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). He argues he only need present "a short and plain

---

made in earlier proceedings in order to ensure uniformity of decisions, protect the expectations of the parties, and promote judicial economy").

[3] Defendants argued, if the Court finds any constitutional violations, Defendants remain entitled to qualified immunity on all three of Plaintiff's claims. *Id.* at 13. As the Court discusses below, it does not find any constitutional violations evidenced by the summary judgment record. Therefore, it need not reach the issue of qualified immunity.

statement of the claim that the pleader is entitled to relief" to defeat Defendants' Motion for Summary Judgment. *Id.* at 5.

In his supporting Brief, Plaintiff posits many *arguments* in support of his claims that Defendants illegally searched the HWY 23 Home: (1) Defendants did not have probable cause to believe Plaintiff resided at the HWY 23 Home, and therefore, his Search Waiver could not be relied upon for the search (ECF No. 58, p. 10-11, 13); (2) Plaintiff had no ownership interest or control over the HWY 23 Home so even as an overnight guest, he could not constructively possess any contraband found in the home (ECF No. 58, p. 6-7); (3) Defendants needed probable cause and a warrant to search the HWY 23 Home but had neither (ECF No. 58, p. 7-9, 11); (4) Plaintiff was not in violation of his parole at the time of the search (ECF No. 58, p. 8); (5) while one is not automatically entitled to standing because he is present in the area searched, an overnight guest has a legitimate expectation of privacy in his host's home (ECF No. 58, p. 9); (6) the Arkansas Police Procedure handbook states before a search incident to arrest can be lawful the arrest must first be lawful (ECF No. 58, p. 12); and (7) Defendants needed reasonable suspicion to believe he was committing a crime before arresting him without a warrant. (ECF No. 58, p. 13-14).

Pivoting to his conspiracy claim, Plaintiff argues: (1) that both Defendants Mackey and Cookinham knew Plaintiff did not reside at the HWY 23 Home, and they both had access to look up his registered parole address but failed to do so (ECF No. 58, p. 15); (2) that Defendants incredibly tell different versions of where they found Plaintiff inside the house (ECF No. 58, p. 15); (3) Defendants cannot agree on whether they verified Plaintiff's residence with his parole officer (ECF No. 58, p. 15); (4) that it does not make sense that Defendant Mackey would allow Defendant Sanchez to come to the door of the home alone if they believed Plaintiff possessed weapons inside the home (ECF No. 58, p. 16); (5) Defendant Cookinham did not know about the

HWY 23 Home until after Plaintiff's arrest because he did not write his narrative until after Plaintiff's arrest (ECF No. 58, p. 16); (6) Defendant Cookinham did not have any corroborating information until after Plaintiff's arrest and his attempt to corroborate using that information proves a conspiracy. (ECF No. 58, p. 16-17).

In conclusion, Plaintiff says "[t]his case comes down to whether the Defendants can prove that they had probable cause to believe the Plaintiff resided at the [HWY 23 Home].  Where that information came from and how it was obtained."  (ECF No. 58, p. 17).  The Court agrees with Plaintiff's framing of the Fourth Amendment issues before the Court.

On March 25, 2025, Defendants replied, arguing (1) that Plaintiff has failed to create any genuine issue of material fact for trial (ECF No. 60, pp. 1-4); (2) that Plaintiff cites to and relies on inaccurate and/or inapplicable case law in his Response (ECF No. 60, p. 4-6); (3) that Plaintiff failed to show that the alleged discrepancies in Defendants' facts establish the elements of a conspiracy claim (ECF No. 60, pp. 6-7); and (4) that Plaintiff failed to present a factual argument in opposition to Defendants Motion on his Fourth Amendment claim, requiring dismissal. (ECF No. 60, p. 7).

As a procedural matter, and before the Court could proceed with its consideration of the Motion, Defendants were ordered on June 13, 2025, to either: (1) properly authenticate exhibits offered on the record by both Plaintiff and Defendants; or (2) point the Court to the portion of the record containing such authentication. (ECF No. 66). Defendants complied with this Order on June 20, 2025, allowing the Court to rely upon relevant exhibits in the summary judgment record.  (ECF No. 67).

## II.    FACTUAL BACKGROUND

The Court observes there is only one fact which Plaintiff adequately disputes, but as explained below, that fact is not material or outcome determinative to any of Plaintiff's remaining claims.  Plaintiff offers multiple arguments in an attempt to dispute some of the facts and timelines proffered by Defendants. For clarity, the Court endeavors to first enumerate all facts admitted or asserted by Plaintiff and identify all facts asserted by Defendants which Plaintiff argues are in dispute.  In doing so, the undersigned omits a plethora of irrelevant factual disputes offered by the parties.[4]  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

### A.  Undisputed Facts

Plaintiff was on parole from the Arkansas Division of Corrections on the date of the search – February 17, 2023.  (ECF No. 59, p. 4).  Plaintiff had a signed and valid warrantless Search Waiver which was on file with the Arkansas Community Corrections during the time in issue.  (ECF No. 59, p. 4).  This Search Waiver contained the following language:

---

[4] All parties have alleged and argued many irrelevant facts to the Court on this summary judgment record.  The Court has carefully distinguished those fact relevant to the issues before it and enumerated them in the most comprehensive way possible given their presentation on the record. Specifically, only facts relevant to the issues of (1) whether Defendants had probable cause to believe the HWY 23 Home was Plaintiff's residence prior to entering the home and searching it; (2) whether the detention by handcuffing Plaintiff during the search was constitutional; and (3) whether Defendants conspired to violate Plaintiff's Fourth Amendment rights, have been included. What items Defendants discovered inside the HWY 23 Home during the search, evidence collected after Plaintiff's arrest, and all of Plaintiff's factual assertions regarding his trips to California or why his property was found inside the HWY 23 Home are irrelevant to these issues and consideration of them has been omitted from this Report and Recommendation.

As a condition of my supervised parole or probation, I agree to allow any Arkansas Community Correction officer, or any certified law enforcement officer, to conduct a warrantless search of my person, place of residence, or motor vehicle at any time, day or night, whenever requested by the Arkansas Community Correction officer, or certified law enforcement officer.

I understand that a warrantless search based on this waiver must be conducted in a reasonable manner but does not need to be based on a clearly expressed suspicion that I am committing or I have committed a criminal offense.

Arkansas law code annotated §16-93-106 requires this waiver to be signed by a person who is placed on supervised probation or is released on parole under this section as a condition of his or her supervised parole or probation.

If you are a parolee revoked to the Division of Correction (ADC) with an option for early release after 90 days, you will be subject to the same conditions of supervision that were in place prior to the revocation including warrantless search of your person, residence, and vehicle.

(ECF No. 50-1, p. 27).

All Defendants testified via their Affidavits that – prior to the search and arrest of Plaintiff on February 17, 2023 – they were aware of Plaintiff's status as a parolee with a warrantless Search Waiver on file. (ECF Nos. 50-1, 50-2, 50-3, 50-4). As of that date, Plaintiff's residence was listed with his parole officer as 18218 Clearwater Road, Fayetteville, Arkansas. (ECF No. 57-1, p. 48). On reports completed by Rogers and Fayetteville Police Department near the time of the February 17 search and arrest, Plaintiff's address was listed as 2 Neffwood Ln, Bella Vista, AR 72715. (ECF No. 57-1, pp. 1-3).

As noted, the search conducted pursuant to Plaintiff's parole Search Waiver was located at 40974 HWY 23, Huntsville, Arkansas. Plaintiff had no ownership interest in or formal lease of the HWY 23 Home. Instead, Plaintiff's girlfriend lived at the HWY 23 Home, and Plaintiff had been staying with his girlfriend, as an overnight guest at the HWY 23 Home, for "a few weeks" prior to February 17, 2023. (ECF No. 59, p. 6). On December 1, 2022, Plaintiff told his parole officer that he was thinking about moving to Huntsville, Arkansas but did not have (or provide) a specific address yet. (ECF No. 57-1, p. 50). Defendant Cookinham was aware of this statement made by Plaintiff to his parole officer before Defendant conducted the search. (ECF No. 57-1, p. 28).

On February 11, 2023, Defendant Cookinham sought and received a Search Warrant for GPS location on a cell phone associated with the number 317.508.3932. In his supporting Affidavit, Defendant Cookinham testified he believed this cell phone belonged to Plaintiff based on the statements of multiple confidential informants.  (ECF No. 57-1, pp. 4-8).

Plaintiff traveled to California the week prior to the search of the HWY 23 Home.  Plaintiff returned to the HWY 23 Home on the same afternoon he arrived back in Arkansas from California.  (ECF No. 57-1, p. 53). Defendant Cookinham personally observed Plaintiff's car(s) parked at the HWY 23 Home and viewed Plaintiff standing outside the HWY 23 Home the day Plaintiff returned from California – February 17, 2023.  (ECF Nos. 50-1, p. 2; 59, p. 4).

Defendants Mackey, Sanchez, and Abernathy responded to Defendant Cookinham's request for aid, and relied upon information that Plaintiff was residing at the HWY 23 Home.  (ECF Nos. 50-1, 50-2, 50-3, 50-4).

On February 17, 2023, when Defendants entered and searched the HWY 23 Home, Plaintiff was present inside the home.  (ECF No. 59).

State charges brought against Plaintiff relating to the search and seizure at the HWY 23 Home on February 17, 2023, were ultimately dropped.  (ECF No. 57-1, p. 56).  Nevertheless, Plaintiff served a ninety (90) day parole violation incarceration because of his arrest on that date. *Id.*  There is no evidence or allegation on the summary judgment record that Plaintiff's parole violation was over-turned or otherwise held invalid.

Upon Plaintiff's release from custody for the parole violation, he was arrested and charged by the United States on charges arising from the search and seizure at the HWY 23 Home on February 17, 2023, as well as for conduct occurring in June 2022.  *Id.; see United States v. Sheets,* 5:23-CR-50044.  The federal charge related to the HWY 23 Home search (Count 3) was dismissed,

along with Count 1, by the United States as part of Plaintiff's plea agreement on Count 2. (ECF No. 50-5). Plaintiff was sentenced by Judge Brooks on June 13, 2024; the Judgment was affirmed by the Eighth Circuit on February 3, 2025; and Plaintiff is currently serving his federal sentence on Count 2 – a charge completely unrelated to the February 2023 search. *Id.*

### B. Parties' Affidavits

In Plaintiff's Affidavit, he asserts he started seeing Kandis Boren in August of 2022 and they drove a 2019 Volkswagen Jetta to California to do a flooring job. In September 2022, Plaintiff and Boren were robbed while in California and the Jetta was stolen. (ECF No. 57-1, p. 49). Plaintiff missed two months of check-ins with his parole officer while in California and had traveled to California without his parole officer's permission. *Id.* at 50. Plaintiff returned to Northwest Arkansas by airplane on November 13, 2022. His wife picked him up from the airport in Tulsa, Oklahoma and they returned to their home at 18218 Clearwater Road, Fayetteville, Arkansas. *Id.*

In December 2022, Plaintiff reported to his parole officer and received "5 points" for his unauthorized travel to California based on the fact he was otherwise in compliance with his parole terms. At this meeting, Plaintiff told his parole officer that he was thinking of moving to Huntsville, Arkansas but did not yet have an address. *Id.*

In January 2023, Plaintiff helped Kandis Boren move from Rogers to her friend's house in Huntsville, Arkansas. Along this time, Plaintiff and Boren resumed their relationship and Plaintiff "was staying the night with her at [Boren's] friend's house" in Huntsville. (ECF No. 57-1, p. 51). On January 23, 2023, Plaintiff received information that the Jetta had been recovered in California, and that he must pick up the vehicle within ten days. The insurance company communicated with Plaintiff through his phone number at 916.793.9334. *Id.*

10

On February 8, 2023, Plaintiff wired some money for Boren using the phone number 317.508.39.32 (the number Defendant Cookinham obtained and would eventually learn more about through the Cell Phone Search Warrant). *Id.* at 51-52.

On February 10, 2023, Boren drove Plaintiff and a friend to the Tulsa, Oklahoma airport to fly to California and recover the Jetta. *Id.* Plaintiff took the phone with the 916.793.9334 number and the phone with the 317.508.3932 number with him to California, but he states the phone with the number 317.508.3932 was someone else's phone.[5]

Plaintiff then drove the Jetta back to Northwest Arkansas, dropped his friend off in Tontitown, Arkansas, and arrived at the HWY 23 Home on February 17, 2023. *Id.* at 53. Upon arrival at the HWY 23 Home, Boren asked an unrelated third party to drive the Jetta with her children to pick up her sister. *Id.* Boren then went to take a shower while Plaintiff waited on her to help him take his car (not the Jetta) to his wife. One of Boren's children returned, and Plaintiff walked him back to the bathroom to talk to Boren. This is the approximate moment Defendant Sanchez opened the door and stepped into the HWY 23 Home. *Id.* at 54. Defendant Sanchez ordered Plaintiff on the ground. Plaintiff complied and Defendant Sanchez put Plaintiff in handcuffs and sat him in the living room. *Id.* Defendant Mackey entered the resident, made a disrespectful comment to Plaintiff, and walked down the hallway to the bedroom to get Boren, who complied and was also escorted to the living room. *Id.*

Defendant Mackey searched Boren's bedroom without obtaining consent. Defendant Mackey returned to the living room and asked Plaintiff "where the rest of the dope" was located. Plaintiff responded he did not know because he did not live there, and this was not his parole

---

[5] In his Affidavit Plaintiff asserts many irrelevant facts which the Court omits here. (ECF No. 57-1, pp. 50-56).

address. *Id.* at 55. Defendant Abernathy and Defendant Cookinham then entered the HWY 23 Home. *Id.* Defendant Abernathy and Defendant Sanchez transported Plaintiff to the Washington County Jail. *Id.* While transported to Washington County, Plaintiff was charged by Madison County; however, Plaintiff's charges from Madison County were dropped within the first sixty (60) days of his parole violation sentence and Plaintiff was released from his parole violation incarceration without pending state charges. *Id.* at 56. On June 9, 2023, Plaintiff was arrested on a federal warrant. *Id.*

In his Affidavit, Defendant Cookinham states in February 2023, he received information from multiple different confidential informants that Plaintiff was selling methamphetamine from the HWY 23 Home. (ECF No. 50-1, pp. 1-2). These informants told Defendant Cookinham that Plaintiff had an AR-15 and handgun in his bedroom at the HWY 23 Home and that he had security cameras streaming live feeds into his bedroom at the home. *Id.* These same informants provided Defendant Cookinham with Plaintiff's phone number which Defendant Cookinham independently knew to be Plaintiff's number. *Id.*

On February 9, 2023, Defendant Cookinham contacted Defendant Mackey to request his help in the investigation of Plaintiff. *Id.* at 2. At some point in February, Defendant Cookinham believed Plaintiff was traveling to California to buy narcotics and bring them back to Arkansas. Defendant Cookinham obtained a search warrant for Plaintiff's cell phone on February 11, 2023. The records obtained with the search warrant confirmed Plaintiff was in California. *Id.* at 2.

Defendant Cookinham avers in his Affidavit that he learned Plaintiff was back in Northwest Arkansas on February 15, 2023. *Id.* Defendants' Statements of Undisputed Facts, Plaintiff's Statement of Facts, and Plaintiff's Affidavit, however, all state Plaintiff returned to Northwest Arkansas on February 17, 2023. (ECF Nos. 52, p. 3; 57-1, p. 53; 59, p. 4). The

undersigned presumes Defendant Cookinham's Affidavit contains a typographical error as to the date Plaintiff arrived back in Arkansas from California as all other supporting documents indicate the date was, in fact, February 17, 2023.

On February 17, 2023, at approximately 6:20 pm, Defendant Cookinham drove past the HWY 23 Home and observed Plaintiff and Plaintiff's two vehicles at the home. Defendant Cookinham called Defendant Mackey and requested assistance in executing a search of the HWY 23 Home pursuant to Plaintiff's Search Waiver. Defendants Cookinham, Mackey, Abernathy, and Sanchez commenced the search at approximately 7:45 pm on February 17, 2023. *Id.* Only Defendants Mackey and Cookinham searched the HWY 23 Home, and they only searched the common areas, and the bedroom believed to belong to Plaintiff. Contraband was found inside the HYW 23 Home, specifically in the bedroom Defendants believed Plaintiff occupied. *Id.* at 3. Plaintiff was mirandized and questioned, arrested and transported to jail. *Id.* at 4.

In the Affidavit of Defendant Mackey – a Springdale Police Department employee and member of the 4th Judicial Division Drug Task Force – Mackey testified he was notified on February 9, 2023, by Defendant Cookinham, that Plaintiff was residing at the HWY 23 Home and selling methamphetamines from this address. (ECF No. 50-2). On February 17, 2023, Defendant Cookinham requested support from Defendant Mackey and the 4th Judicial Division Drug Task Force to conduct a search of Plaintiff's residence and vehicles at the HWY 23 Home pursuant to Plaintiff's Search Waiver. *Id.* Defendant Mackey then assisted Defendant Cookinham with the actual search of the HWY 23 Home. *Id.* During the search, two cell phones belonging to Plaintiff were confiscated. *Id.* There is no evidence in the record indicating Defendant Mackey conducted any independent investigation as to Plaintiff's residence before aiding Defendant Cookinham in the search and seizure on February 17, 2023.

Defendant Sanchez testified in his Affidavit that he was employed by Springdale Police Department and a member of the 4th Judicial Division Drug Task Force when he participated in the search of the HWY 23 Home on February 17, 2023, pursuant to Plaintiff's Search Waiver. (ECF No. 50-3, pp. 1-2). Defendant Sanchez testified that he participated in this search at the request of Defendant Cookinham. *Id.* Similarly to Defendant Mackey, there is no evidence Defendant Sanchez conducted any independent investigation to Plaintiff's residence prior to aiding with the search. *Id.*

Defendant Abernathy testified in her affidavit she was employed by the Springdale Police Department and a member of the 4th Judicial Drug Task Force who participated in the search of the HWY 23 Home on February 17, 2023. (ECF No. 50-4). Defendant Abernathy testified that she, along with other detectives, gathered outside the residence of Plaintiff to conduct a search of his residence and vehicles pursuant to his Search Waiver. She further testified she participated in this search in response to Defendant Cookinham's request for help. *Id.*

### C. Other Relevant Exhibits

On February 11, 2023, Defendant Cookinham received an executed Search Warrant for cell phone information on the number 317.508.3932. (ECF No. 50-1). This warrant included live GPS locations from the date of issue for thirty days as well as historical data from the dates of August 11, 2022, through February 11, 2023. *Id.* at 9. This warrant sought the following information:

14

It is further requested to provide historical data from **08/11/2022** to **02/11/2023** from midnight to midnight. The requested information is not limited to the following:
Subscriber information, to include name, address and phone number.
Other phone numbers associated with aforesaid account.
Email addresses associated with the aforesaid account.
The IMEI number(s) associated with the account(s)
Text message detail to include cell site location and sector.
Call log detail to include cell site location and sector.
Data usage detail to include cell site location and sector.
Cellular site records shall include GPS location of the cellular site, as well as sector / azimuth information.
Provide any logged NELOS/RTT data.
Type of phone affiliated with the account(s).
A list of definition pertinent to the records supplied.
Letter of authenticity.
Said records shall be supplied in digital format.

(ECF No. 50-1, pp. 10-11) (hereinafter "Cell Phone Search Warrant").

Plaintiff does not dispute the validity of the Cell Phone Search Warrant or the information it produced, but he does assert that 317.508.3932 – the subject number for the warrant – does not belong to him. (ECF No. 59, p. 2). Plaintiff also asserts in his Statement of Facts that the historical GPS location data from this cell phone was not obtained until after his arrest. (ECF No. 59, p. 3).

The Affidavit Defendant Cookinham submitted to obtain the Cell Phone Search Warrant was provided by Plaintiff. (ECF No. 57-1, p. 6). The undersigned has reviewed this Search Warrant Affidavit which includes relevant information as to why Defendant Cookinham believed the 317.508.3932 phone number belonged to Plaintiff; it also includes evidence relating to the reliability of Defendant Cookinham's confidential informants prior to the February 17, 2023, search. The Affidavit states in full:

In the month of February, 2023, Detective Cookinham with the Rogers Police Department and Benton County Drug Unit, has been investigating Aaron SHEETS (07-02-1983) for narcotics trafficking. Detective Cookinham was familiar with SHEETS from previous narcotics investigations regarding SHEETS dating back to 2022. From these previous narcotics investigations regarding SHEETS, Detective Cookinham was made aware that SHEETS was trafficking large amounts of methamphetamine.

> On a day in February, 2023, Detective Cookinham was provided with information from two cooperating defendants that SHEETS was trafficking narcotics in Benton County, Arkansas. Both of the cooperating defendants provided information that matched what the other party was giving. One of the cooperating defendants provided phone number 317-508-3932 as SHEETS'S phone number. The cooperating defendant advised that SHEETS used this phone number for setting up narcotics sales and used the phone to help communicate about trafficking narcotics. The cooperating defendant consented to a search of their cell phone. Detective Cookinham observed in the defendant's cell phone the contact name "Sheets1". Detective Cookinham observed the phone number for "Sheets1" was 317-508-3932. Detective Cookinham observed communication from the cooperating defendant and this phone number. This same cooperating defendant advised Detective Cookinham that SHEETS was flying to California on the same day to pick up a vehicle and narcotics. Detective Cookinham was able to contact local law enforcement, who observed SHEETS get on to a plane that was headed for California. Detective Cookinham was able to corroborate other information provided by both cooperating defendants that was proven true and accurate regarding SHEETS.

On another day in February 2023, a proven confidential and reliable informant contacted Detective Cookinham and informed Detective Cookinham that the confidential informant (CI) had received a phone call from Aaron SHEETS (07-02-1983). The CI provided Detective Cookinham with phone number 317-508-3932 for SHEETS. The CI advised that during the course of the conversation SHEETS spoke about trafficking narcotics. The record should note that on a separate day in February, this same CI was with SHEETS and observed SHEETS selling methamphetamine. The CI contacted Detective Cookinham that day and informed Detective Cookinham of the above information, Detective Cookinham was able to establish surveillance on SHEETS that day but attempts to take him into custody were unsuccessful. The record should note that this proven reliable informant previously provided information to Detective Cookinham about SHEETS that matched what the other two cooperating defendants provided.

(ECF No. 57-1, pp. 6-8).

While Plaintiff disputes the 317.508.3932 phone number is his phone number, he also admits to using this phone number on multiple occasions (ECF Nos. 57-1, p. 48-56; 59, pp. 1-10), and does not dispute that a phone with the number 317.508.3932 was recovered during the search of the HWY 23 Home.

Plaintiff also submitted Defendant Cookinham's Narrative of his investigation of Plaintiff which provides relevant information regarding Defendant Cookinham's confidential informants and further explanation of the corroboration of the informants' statements. (ECF No. 57-1, pp. 28-29). The Narrative reads in pertinent part:

From October 2021 to February 2023, Task Force Officer (TFO) Cookinham had been provided with information regarding Aaron SHEETS (07-02-1983) in regards to SHEETS trafficking narcotics in Northwest Arkansas. During that time frame, TFO Cookinham had been provided with numerous amounts of information regarding SHEETS from prior cooperating defendants, prior confidential and reliable informants, current cooperating defendants and current confidential and reliable informants. During the above-mentioned time frame, TFO Cookinham had also observed communication between SHEETS and other defendants that TFO Cookinham had arrested for large amounts of narcotics and subsequently conducted search warrants on their cell phones. In those cell phone extractions, TFO Cookinham observed communication from SHEETS attempting to acquire narcotics and communication about regarding SHEETS trafficking narcotics. TFO Cookinham had observed that SHEETS was a parolee and was on active supervision with a search waiver. TFO Cookinham confirmed this information through NCIC records and probation and parole records.

During the month of February 2023, TFO Cookinham had established electronic surveillance on SHEETS. TFO Cookinham had been provided with information from multiple different sources regarding SHEETS recent activity, residence, cell phone number, vehicle, etc. The multiples sources of information had previously shown TFO Cookinham on a map the exact residence that SHEETS was living at. Each source described SHEETS'S bedroom in the residence and showed TFO Cookinham what the residence looked like. The record should note, that the information provided from these multiple different sources was given individually and all matched the other.

TFO Cookinham corroborated the information from these sources through physical surveillance and TFO Cookinham's own prior knowledge of SHEETS. Through TFO Cookinham's investigation, TFO Cookinham corroborated that SHEET'S lived at 40949 Highway 23 in Huntsville, Arkansas. TFO Cookinham observed that the numeric to the above-mentioned address was on the mailbox to the residence that the multiple sources had informed TFO Cookinham about. TFO Cookinham further obtained cell phone records from SHEET'S cell phone via search warrant. The cell phone records showed that thousands of SHEET'S phone calls came from a cell phone tower right behind SHEET'S residence. Additionally, TFO Cookinham had been advised that SHEET'S had done an electronic check-in with his parole officer. The GPS coordinates for where SHEETS was when he checked in was the above-mentioned residence. Additionally, SHEETS had told his parole officer that he was moving to Huntsville back in December of 2022, but claimed he did not know the exact address.

During the course of the electronic surveillance on SHEETS, TFO Cookinham observed that SHEETS was in California. That information matched the previously given information from the multiple different sources. TFO Cookinham was advised that SHEETS was supposed to pick up a large quantity of narcotics in California as well a Volkswagen Jetta. On 02-17-2023, TFO Cookinham observed SHEETS outside of his residence standing next to a Volkswagen Jetta. At approximately 1945 hours, on 02-17-2023, Task Force

Officer (TFO) Cookinham, Lieutenant Brashear and Probation and Parole Officer Jeffery assisted the 4th Judicial Drug Task Force with a Probation and Parole visit at 40949 Highway 23 in Huntsville, Arkansas.

(ECF No. 57-1, pp. 28-29) (errors in original).[6]

Plaintiff disputes Defendant Cookinham's Narrative because it was written after Plaintiff's arrest. (ECF No. 59, p. 3). Plaintiff also disputes that Defendant Cookinham received information about Plaintiff's trafficking narcotics from three different informants in February 2023. (ECF No. 59, p. 1-2). Plaintiff disputes that the third informant corroborated or provided information matching previously provided information from the first two informants. (ECF No. 59, p. 2). Other than making arguments, Plaintiff provides no evidence for the Court's consideration.

Plaintiff further disputes Defendant Cookinham's statement that one of Plaintiff's electronic check-ins occurred from the HWY 23 Home as it is not listed on his Probation Supervision Contacts and this list shows no remote check-ins between December 2 and February 17, 2023. (ECF No. 57-1, pp. 12-21). The undesigned observes as accurate that the check-in list does not reflect any check-ins by Plaintiff during the time frame noted by Plaintiff. There are, however, other remote check-ins noted on the Supervision Contacts on multiple dates prior to December 22, 2023. And importantly, the Supervision Contacts exhibit does not provide the location of the remote check-in. It simply lists whether a check-in occurred or was missed. *Id.* The undersigned has no way of ascertaining, based on the current record, what date Plaintiff's

---

[6] The Court notes this is not Defendant Cookinham's complete Narrative as much of the narrative contains information irrelevant to the issues before this court, e.g., information gained from the search of the HWY 23 Home and further investigations after Plaintiff's February 17, 2023, arrest.

remote check-in occurred from the HWY 23 Home as neither party has provided any evidence of same.

## III.    LEGAL STANDARD

While Plaintiff incorrectly argues for a Rule 12(b)(6) motion to dismiss standard, the Court finds summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607.  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. at 610. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV.    DISCUSSION

As explained above, Plaintiff has three claims which are before the Court on summary judgment: (1) that the warrantless search, on February 17, 2023, of the HWY 23 Home violated

Plaintiff's Fourth Amendment rights; (2) that an illegal search and seizure, on February 17, 2023, of the HWY 23 Home, violated Plaintiff's Fourth Amendment rights; and (3) that all Defendants conspired to violate Plaintiff's Fourth Amendment rights, on February 17, 2023, during the illegal search and seizure at the HWY 23 Home.  (ECF No. 1).  Plaintiff's Claims One and Two are interrelated search and seizure claims, and the Court will analyze them together before turning to Plaintiff's Claim Five alleging conspiracy.

### A.  Claims One and Two – Search pursuant to Search Waiver

Defendants argue their search of the HWY 23 Home was legally executed pursuant to Plaintiff's Search Waiver.  (ECF No. 51).  Plaintiff responds that Defendants did not have probable cause to believe Plaintiff resided at the HWY 23 Home, therefore, his Search Waiver could not be relied upon for the search.  (ECF No. 58, p. 10-11, 13).

The Fourth Amendment provides for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend IV. To assert a violation of the Fourth Amendment, Plaintiff must possess a legitimate expectation to privacy.  *United States v. Green*, 275 F.3d 694, 698 (8th Cir. 2001).  "To establish a legitimate expectation of privacy, [Plaintiff] must demonstrate: (1) a subjective expectation of privacy; and (2) that the subjective expectation is one that society is prepared to recognize as objectively reasonable."  *United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995).  Parolees such as Plaintiff, however, have significantly curtailed expectations of privacy.

Arkansas law requires parolees to sign warrantless search waivers; specifically, the statute provides as follows:

(a)(1) A person who is placed on supervised probation or is released on parole under this chapter is required to agree to a waiver as a condition of his or her supervised probation or parole that allows any certified law enforcement officer or Division of Community Correction officer to conduct a warrantless search of his or her person, place of residence,

or motor vehicle at any time, day or night, whenever requested by the certified law enforcement officer or division officer.

(2) A warrantless search that is based on a waiver required by this section shall be conducted in a reasonable manner but does not need to be based on an articulable suspicion that the person is committing or has committed a criminal offence.

Ark. Code Ann. § 16-93-106(a)(1)-(2).

The Arkansas Court of Appeals has found the statute constitutional under both the Arkansas and United States Constitutions. *See Clingmon v. State*, 620 S.W.3d 184, 190 (Ark. App. 2021) (explaining the statutory language is clear that reasonable suspicion is not required and upholding a suspicionless search of a parolee's residence). Moreover, the United States Supreme Court has upheld a similar statute authorizing a suspicionless search of a parolee's person. In *Samson v. California*, 547 U.S. 843 (2006), the California statute at issue required parolees to "'agree in writing to be subject to search or seizure by a parole officer or other peace officer ..., with or without a search warrant and with or without cause.'" *Id.* at 846. The Supreme Court concluded a condition of release could "so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment." *Id* at 847. Regarding the expectation of privacy, the Court noted that parole was "an established variation on imprisonment" on which the statute imposed a clearly stated warrantless search condition. *Id.* at 852. Therefore, the Court "conclude[d] that petitioner did not have an expectation of privacy that society would recognize as legitimate." *Id.* at 852. The Court further observed that the State "has an 'overwhelming interest' in supervising parolees because 'parolees ... are more likely to commit future criminal offenses.'" *Id.* at 853 (quoting *Pennsylvania Bd. of Probation and Parole*, 524 U.S. 357, 365 (1998)). The Court held "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." *Id.* at 857.

On the date of the search at issue, Plaintiff's status as a parolee with a valid Arkansas Search Waiver is undisputed. Therefore, a suspicionless search of his residence would not violate the Fourth Amendment. *Clingmon*, 620 S.W.3d at 190. However, the specific question presented here requires additional attention as Plaintiff claims the HWY 23 Home was not his registered parole address, but instead the residence of his girlfriend of whom he was merely an overnight guest for a few weeks. Accordingly, the issue becomes whether a search, pursuant to Plaintiff's Search Waiver, of an address that is not his registered parole address is constitutional.

The Eighth Circuit provided instruction on this specific issue in a recent decision. In *United States v. Thabit*, the Eighth Circuit held: "[a]n officer must have probable cause to believe a dwelling is the residence of a parolee in order to initiate a warrantless search of a residence not known to be the home of a parolee." 56 F.4th 1145, 1151 (8th Cir. 2023). "In this context, probable cause would require a person of reasonable caution to believe the parolee resided at a certain location prior to a search. Probable cause is assessed based on the totality of the circumstances [and] is a fluid concept—turning on the assessment of probabilities in particular contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* (internal citations omitted). Accordingly, the pertinent question before the Court is whether Defendants had probable cause to believe the HWY 23 Home was Plaintiff's residence for purposes of his Search Waiver on February 17, 2023.

Plaintiff argues he still lived with his wife at his registered parole address at the time of the search. (ECF No. 57-1, p. 50). For Fourth Amendment purposes, however, Plaintiff may have more than one residence. *See United States v. Rise,* 83 F.3d 212, 217 (8th Cir. 1996). Additionally, Arkansas courts have defined a residence as a "place of actual abode, and not an established domicile or home, to which one expects to return and to occupy at some future time." *Norton v.*

*Purkins,* 157 S.W.2d 765, 767 (Ark. 1942).  Even the search of a hotel room, as a parolee's residence, pursuant to the parolee's valid search waiver, may be lawful.  *See e.g. United States v. Titterington,* 2025 WL 1005162, (E.D. Ark April 3, 2025) (holding an officer's knowledge of parolee status, valid Arkansas search waiver, parolee renting the hotel room for several nights, individuals buying methamphetamine from the hotel room, friends of parolee and his guest coming to visit the hotel room, dogs being kept in the hotel room, and hotel video footage was sufficient basis for the officer to believe the parolee was maintaining an ongoing residence at the hotel with no apparent intention of departing).  Accordingly, Plaintiff's assertion of a different registered parole address, and living with his wife at this address, does not preclude Defendants from forming probable cause to believe the HWY 23 Home was Plaintiff's residence on February 17, 2023, for purposes of his Search Waiver.

In *Thabit,* the Eighth Circuit enumerated information that may be used by law enforcement to prove residence: (1) anonymous tips; (2) information from confidential informants; (3) conversations with people who know the parolee; or (4) police records.  *Id.* at 1152 (citing *United States v. Clayton*, 210 F.3d 841, 842 (8th Cir. 2000); *United States v. Risse*, 83 F.32 2112, 2114-15 (8th Cir. 1996).  Further, the *Thabit* court notes tips from confidential informants must be corroborated to serve as a basis for probable cause of residence.  *Id.* (citing *United States v. Koons,* 300 F.3d 985, 991 (8th Cir. 2002); *United States v. Leppert,* 408 F.3d 1039, 1041 (8th Cir. 2005) ("Here the [confidential informant] gave reliable information in the past that resulted in numerous successful prosecutions, and some of [the defendant's] statements were corroborated by statements of the reliable [confidential informant]."); *United States v. Winarske,* 715 F.3d 1063, 1067-68 (8th Cir. 2013) (holding probable cause existed where a reliable informant had a track record, had their statements corroborated, and gave predictive information)).

### 1. Defendant Cookinham

It is admitted and undisputed that Plaintiff was staying overnight at the HWY 23 Home for at least a "few weeks" prior to the search on February 17, 2023.  (ECF No. 59, p. 6).  Despite Plaintiff's quarrel with the confidential informants' statements to Defendant Cookinham regarding the location of where Plaintiff was living and selling methamphetamines, Plaintiff does not dispute that he was staying with his girlfriend at the HWY 23 Home prior to his trip to California.  *Id.* Plaintiff testifies in his Affidavit that he returned to the HWY 23 Home on the afternoon he arrived back in Arkansas from his trip to California.  (ECF No. 57-1, p. 53).  He does not dispute the fact Defendant Cookinham personally observed Plaintiff's presence at the HWY 23 home after receiving information Plaintiff had returned to Arkansas.  (ECF Nos. 50-1, p. 2; 59, p. 4).

What Plaintiff disputes is the characterization of the HWY 23 Home as his residence rather than disputing whether he was residing/living at the HWY 23 Home on February 17, 2023. Plaintiff is arguing about the legal classification but not disputing a material fact.  The Court is unconvinced by Plaintiff's characterization of his status at the HWY 23 Home as a mere overnight guest.  (ECF No. 58).  In his pleadings, Plaintiff admits he kept clothes and other personal items at the HWY 23 Home, and acknowledges he admitted to Defendants on February 17, 2023, to staying with his girlfriend at the HWY 23 Home for a month prior to the search.  (ECF No. 58, p. 9).  After being in California for a week, Plaintiff returned to the HWY 23 Home on the day he returned to Arkansas instead of returning to his registered parole address where he now claims he resided with his wife.  It is undisputed Defendant Cookinham confirmed Plaintiff's physical presence at the residence via visual surveillance on February 17, 2023.  (ECF Nos. 50-1, p. 2; 59, p. 4).  The Court finds these undisputed facts support a conclusion that the HWY 23 Home was

Plaintiff's residence on February 17, 2023. *See Norton v. Purkins,* 157 S.W.2d at 767 (indicating

a residence is a place of abode where someone intends to return).

Moreover, the Court finds the summary judgment record includes additional evidence

supporting Defendant Cookinham's probable cause to believe Plaintiff was residing at the HWY

23 Home, despite Plaintiff's attempts to muddy the waters. Plaintiff offers only arguments and

unfortunately for his Claims, these arguments cannot and do not create genuine issues of material

fact for trial.

### a.  Cell Phone Search Warrant

The summary judgment record shows Defendant Cookinham sought and received the Cell

Phone Search Warrant on February 11, 2023.  (ECF Nos. 57-1, p. 6-8; 50-1, pp. 9-11).  Plaintiff

does not dispute the existence or validity of this Cell Phone Search Warrant.  He challenges only

(1) that the subject phone number was not his cell phone and instead he had a different phone

number; and (2) that Defendant Cookinham did not have access to the GPS ping locations from

the tower behind the HWY 23 Home until after the search on February 17, 2023.  (ECF Nos. 57-

1, pp. 48-56; 58, p. 11; 59, p. 4).

Plaintiff argues he had a different cell phone and gives multiple incidences of using that

separate cell phone.  (ECF Nos. 57-1, pp. 48-56; 58).  The record, however, includes Plaintiff's

admissions of using the subject phone on multiple occasions; taking the phone with him to

California; and the phones presence at the HWY 23 Home on February 17, 2023.  (ECF No. 57-1,

p. 52, 53; 59, p. 6; 50-2, pp. 3-4).  Furthermore, the Affidavit in support of the Cell Phone Search

Warrant indicates more than one confidential informant communicated with Plaintiff using the

subject phone number.  (ECF No. 57-1, p. 6-7).  Finally, Defendant Cookinham testified in his

Affidavit in support of this Motion that he believed the subject phone number to be Plaintiff's

(ECF No. 50-1, p. 2), which is abundantly clear given he sought and received the Cell Phone Search Warrant for the subject phone number.  At this stage, Plaintiff must do more than simply state the phone does not belong to him when faced with contrary evidence in the record.  *See Matsushita*, 475 U.S. at 586 (explaining the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts" and he may not rest on mere allegations or pleading denials, but must "come forward with specific facts showing that there is a genuine issue for trial" ); *Bolderson v. City of Wentzville, Missouri,* 840 F.3d 982, 986-87 (8th Cir. 2016) (the non-moving party must meet proof with proof to survive summary judgment).

Next, the record clearly contradicts Plaintiff's argument regarding the timing of Defendant Cookinham's access to the GPS ping locations behind the HWY 23 Home.  The Cell Phone Search Warrant was executed on February 11, 2023, and included historical location data from August 11, 2022, through February 11, 2023.  (ECF No. 50-1, pp. 9-11).  Specifically, the Cell Phone Search Warrant included: "Text message detail to include cell site location and sector;" "[c]all log detail to include cell site location and sector;" and "[d]ata usage detail to include cell site location and sector." *Id.*  Furthermore, the Return of Search Warrant and Defendant Cookinham's Affidavit states Defendant Cookinham began receiving location information from Verizon pursuant to this warrant on February 11, 2023 – six days prior to the search.  (ECF No. 50-1, pp. 2, 11).  Lastly, Defendant Cookinham states in his Narrative that he used these GPS ping locations to corroborate Plaintiff's residing at the HWY 23 Home prior to the search.  (ECF No. 57-1, pp. 28-29).  In the absence of contrary evidence, Plaintiff's argument alone does not create a genuine issue of material fact necessary to survive summary judgment.  The record clearly indicates historical GPS location data was available to Defendant Cookinham as early as February 11, 2023 – well prior to the search on February 17, 2023. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell

two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

### b.  Confidential Informant Statements and Corroboration

The Court finds the confidential informants statements given to Defendant Cookinham as undisputed for purposes of Defendants' Motion.  While Plaintiff attempts to dispute the existence of the confidential informant statements and that Defendant Cookinham did not corroborate them against one another, he fails to produce any evidence or reasonable inference that these informants did not exist, or their statements were uncorroborated by Defendant Cookinham.  Plaintiff has again failed to meet proof with proof regarding the confidential informant statements and their corroboration and has not established existence of a disputed material fact.  *See Wilson v. Miller,* 821 F.3d 963, 970 (8th Cir. 2016) ("A plaintiff may not simple cite "unsupported self-serving allegations but must substantiate [his denials] with sufficient probative evidence") (quoting *Reed v. City of St. Charles, Mo.,* 561 F.3d 788, 790-91 (8th Cir. 2009)).

In his Affidavit, Defendant Cookinham testified he received information from multiple confidential informants that Plaintiff was selling methamphetamines from the HWY 23 Home. Defendant Cookinham also testified these same informants provided him with Plaintiff's phone number.  (ECF No. 50-1, pp. 1-2).  Defendant Cookinham's Narrative explained how he corroborated information from his informants against one another; through his own surveillance; with information provided to him regarding Plaintiff's parole check-ins; and through the Cell Phone Search Warrant GPS information.  (ECF No. 57-1, pp. 28-29).

Plaintiff argues Defendant Cookinham did not include the confidential informant statements related to the location of the HWY 23 Home in his Affidavit for the Cell Phone Search

Warrant.  According to Plaintiff, Defendant Cookinham must not have known such information prior to the search on February 17, 2023, or he necessarily would have included it in the Cell Phone Search Warrant Affidavit.  (ECF No. 58, pp. 10-11).  The Court does not find the omission of this information in the Affidavit for the Cell Phone Search Warrant sufficient evidence to create an issue of material fact as to whether the confidential informant statements existed.  As argued by Defendants, on February 11, 2023, Defendant Cookinham sought a warrant on cell phone information, not a search warrant for Plaintiff's residence.  (ECF No. 60).  The Court agrees that Plaintiff's residence was irrelevant to that Cell Phone Search Warrant and any omission of the residence in the earlier Affidavit is not indicative of its nonexistence.

Plaintiff next argues that only seven days elapsed from the issuance of the Cell Phone Search Warrant and the search of the HWY 23 Home which was an insufficient period for Defendant Cookinham to corroborate his confidential informant statements.  (ECF No. 59, p. 2-3).  Plaintiff argues he was in California the entire time between the issuance of the Cell Phone Search Warrant and the search of HWY 23 Home so Defendant Cookinham could not have corroborated he was selling methamphetamines from the HWY 23 Home.  With respect to this argument, the Court notes Plaintiff has confused the issue before the Court.  Whether Defendant Cookinham corroborated that Plaintiff was selling methamphetamines is irrelevant to the Fourth Amendment analysis – Defendant Cookinham needed only corroborate the fact that Plaintiff was residing at the Hwy 23 Home.  As explained above, the Court finds Plaintiff's trip to California and Defendant Cookinham's observation of Plaintiff's arrival at the HWY 23 Home immediately upon his return to the state serves as corroborating evidence of Plaintiff's residence at the HWY 23 Home.  Furthermore, Plaintiff provides no evidence to dispute Defendant Cookinham's explanation in his Narrative that each of his three informants provided the same information

independently and yet the information all matched. (ECF No. 57-1, pp. 28-29). Plaintiff proffers no evidence to dispute the corroboration of the informant's statements regarding the trip to California through the GPS locations of the cell phone he carried to California. This fact serves to bolster the reliability of the informants and their proffered information.

Plaintiff also challenges facts asserted in Defendant Cookinham's Narrative. Plaintiff initially argues Defendant Cookinham's Narrative cannot be considered because it was written after Plaintiff's arrest. (ECF No. 59, p. 3). Defendants argue investigation narratives are often written after arrest and the date the Narrative was written does not evidence the information contained in the Narrative was not known prior to the search and arrest. (ECF No. 60, p. 7). The Court agrees. Defendant Cookinham offered a supplemental Declaration authenticating the Narrative offered by Plaintiff as a true and correct copy of the Narrative he drafted after the search of the HWY 23 Home on February 17, 2023. (ECF No. 67-3, p. 2). The Court finds it may properly rely on the information included in the Narrative because the date the facts were reduced to writing does not negate Defendant Cookinham's testimony that he received the information prior to the search. (ECF No. 50-1).

Plaintiff argues there are inconsistencies between Defendant Cookinham's statements in the Affidavit for the Cell Phone Search Warrant and his statements in the Narrative, arguing they are proof the confidential informants did not provide Defendant Cookinham with the residence information he now alleges. (ECF No. 58, pp. 10-11). Specifically, Plaintiff points to Defendant Cookinham's statement in his Cell Phone Search Warrant Affidavit that he had information Plaintiff was trafficking narcotics in Benton County versus Cookinham's Narrative that the confidential informant provided information Plaintiff was selling Methamphetamines from the HWY 23 Home in Madison County. *Id.* Plaintiff argues he could not have been doing both. As

explained above, Defendant Cookinham sought a Cell Phone Search Warrant when he submitted his affidavit on February 11, 2023. The location of Plaintiff's residence was irrelevant to that warrant and its subject matter. Secondly, simply because the Cell Phone Search Warrant was based on Defendant Cookinham's belief Plaintiff was trafficking narcotics in Benton County, this does not negate the credibility of multiple confidential informant statements that Plaintiff was living in the neighboring Madison County (and/or selling drugs there). And contrary to Plaintiff's allegations, he could have been doing both.

Additionally, Plaintiff argues Defendant Cookinham used old information from confidential informants and represented it as recent. (ECF No. 58, p. 11). The Court recognizes it is somewhat confusing to determine the exact dates when Defendant Cookinham received the information from the multiple confidential informants. However, Cookinham testified in his Affidavit that the information was received in February 2023. (ECF No. 50-1, p. 1). Accordingly, the information could not be considered "old" information. Additionally, the record is clear that Defendant Cookinham corroborated his informants' information through his own surveillance of Plaintiff immediately prior to the search on February 17, 2023, and Defendant Cookinham also possessed GPS locations of the phone which Plaintiff carried that placed him at the HWY 23 Home. (ECF No. 57-1, pp. 28-29). Accordingly, even if the informant information was "old" or stale, it was confirmed by Defendant Cookinham's observations immediately preceding the search.

Finally, as explained above, Plaintiff himself admitted facts evidencing his actual residence at the HWY 23 Home. Accordingly, Plaintiff's challenges to the confidential informants'

statements (including that Plaintiff was living at the HWY 23 Home) fail to create genuine issue of material fact here.[7]

Plaintiff has failed to create any genuine issue of material fact as to whether Defendant Cookinham had probable cause to believe the HWY 23 Home was Plaintiff's residence on February 17, 2023. In *Thabit*, the Court found the record did not support probable cause for belief of residence because the defendants only had one confidential informant tip without any corroboration. *Thabit*, 56 F.4th at 1152. In contract, the summary judgment record before the Court indicates Defendant Cookinham had multiple informants' statements indicating Plaintiff was residing at the HWY 23 Home and those statements were corroborated by (1) Defendant Cookinham's own visual surveillance; (2) Defendant Cookinham's electronic surveillance with the Cell Phone Search Warrant information indicating 1,000s of GPS location pings occurred at the tower behind the HWY 23 Home; (3) the similarities in each informant's statement when compared; and (4) Defendant Cookinham's knowledge of Plaintiff's statement to his parole officer that he was thinking of moving to Huntsville – where the HWY 23 Home is located. Furthermore, as explained above, Plaintiff has admitted facts sufficient to establish the HWY 23 Home as his residence on February 17, 2023, for purposes of the Fourth Amendment. The amount of corroborating evidence obtained by Defendant Cookinham satisfies the requirement of probable cause stated in *Thabit*. *See also United States v. Odom*, Civil No. 4:22-cr-00049-LPR-1, 2024 WL 216784, at *9-10 (E.D. Ark. Jan. 19, 2024) (explaining that one confidential informant tip that he

---

[7] As noted in the Factual Background Section, Plaintiff also disputes Defendant Cookinham's statement that he corroborated Plaintiff's residence location through a parole check-in GPS location. The Court finds this dispute legitimate but finds it cannot determine whether Plaintiff conducted a parole check-in from the HWY 23 Home. This disputed fact, however, is not material as it does not negate the plethora of other corroborating evidence known to Defendant Cookinham at the time of the search of the HWY 23 Home. Accordingly, even though this fact is adequately disputed, it does not create a genuine issue of material fact for trial.

could purchase methamphetamine from the parolee at a specific hotel room which was corroborated by visual surveillance of the buy at the motel room, physical recognition of the parolee by the officer from previous narcotics cases, and the hotel room key on the parolee's person during a traffic stop following the parole leaving the hotel room was sufficient to form probable cause of residence at the hotel room to search pursuant to the parolee's warrantless search waiver).

Therefore, the summary judgment record before the Court supports a finding, as a matter of law, that Defendant Cookinham had probable cause to believe Plaintiff was residing at the HWY 23 Home for purposes of executing a search of the property pursuant to Plaintiff's Search Waiver. Accordingly, the Court finds Plaintiff's Claims One and Two alleging illegal search and/or warrantless search against Defendant Cookinham should be dismissed.[8]

---

[8] The Court notes Plaintiff's thoroughness in his Brief in support of his claims. However, many of Plaintiff's arguments assert legal premises that are not applicable to the facts before the Court. First, Plaintiff argues he had no ownership interest or control over the HWY 23 Home so, even as an overnight guest, he could not constructively possess any contraband found in the home. (ECF No. 58, p. 6-7). Whether Plaintiff possessed the contraband discovered in the search of the HWY 23 Home is not before the Court here because his claims of unlawful arrest have previously been dismissed on screening. *See supra,* Section I, fn. 2. Next, Plaintiff argued Defendants needed probable cause and a warrant to search the HWY 23 Home. (ECF No. 58, p. 7-9, 11). However, Plaintiff acknowledges the standard explained in *Thabit* and the fact he had a valid Search Waiver on file with the Arkansas Department of Corrections. Accordingly, the requirements for Defendants' search of the HWY 23 Home do not include a warrant or probable cause of a crime being committed. Instead, his Claims One and Two are properly analyzed under *Thabit* herein. Thirdly, Plaintiff argues he was not in violation of his parole at the time of the search. (ECF No. 58, p. 8). Again, as explained in detail above, a parole violation is irrelevant to the constitutionality of a warrantless search pursuant to a valid Search Waiver. *See supra* Section IV. Plaintiff then argues he is entitled to standing to challenge the search of the HWY 23 Home because he was an overnight guest. (ECF No. 58, p. 9). Also, as explained herein, the Court did not find Plaintiff to be merely an overnight guest at the Hwy 23 Home. Plaintiff's admissions and other undisputed evidence before the Court establishes that he was a resident for Fourth Amendment purposes. *See supra,* Section IV. However, the Court agrees he has standing to challenge the search as a resident subject to a Search Waiver, thus the instant claims. Plaintiff then argues the Arkansas Police Procedure handbook states that before a search incident to arrest can be lawful, the arrest must first be lawful. (ECF No. 58, p. 12). Plaintiff misclassifies the instant search here. It is undisputed the search was pursuant to his Search Waiver, with the dispute being whether Defendants had probable

## 2.  Defendants Mackey, Sanchez, and Abernathy

As to Defendants Mackey, Sanchez, and Abernathy the record is clear that they wholly relied upon information provided to them by Defendant Cookinham when he called and requested their aid in searching the HWY 23 Home.  (ECF Nos. 50-1, 50-2, 50-3, 50-4).  While Plaintiff argues Defendants Mackey, Sanchez, and Abernathy should have conducted their own independent investigation into Plaintiff's Search Waiver and his residence, he does not dispute the fact they relied up on Defendant Cookinham and the information he provided.  (ECF Nos. 57-1, pp. 48-56; 58).

"Probable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on the scene if there is some degree of communication."  *United States v. Edwards,* 891 F.3d 708, 711-12 (8th Cir. 2018) (applying the collective knowledge doctrine to a warrantless search of a vehicle) (quoting *United States v. Horne,* 4 F.3d 579, 585 (8th Cir. 1993)). *See also United States v. Gillette,* 245 F.3d 1032, 1034 (8th Cir. 2001) (explaining a deputy called to the scene to assist in an ongoing drug investigation was imputed the consent to search a vehicle even though he was not present for the consent because the validity of the search was based on the collective knowledge of all the officers working the drug investigation).  The collective knowledge theory allows one officer to accept facts or directives communicated by another officer and to act on that communication.  *See e.g., United States v. Twiss,* 127 F.3d 771, 774 (8th Cir. 1997) (holding

---

cause to believe the HWY 23 Home was Plaintiff's residence for purposes of his Search Waiver. Accordingly, any analysis on search incident to arrest would be misplaced.  Finally, Plaintiff again argues his arrest was illegal by arguing Defendants needed reasonable suspicion to believe he was committing a crime before arresting him without a warrant.  (ECF No. 58, p. 13-14).  The Court reiterates that the lawfulness of Plaintiff's arrest is not currently before the Court. *See supra* Section I, fn. 2.

a warrantless search may be based only on information communicated from one officer to another officer).

Defendants Mackey, Sanchez, and Abernathy all testified in their Affidavits they proceeded to the HWY 23 Home on February 17, 2023, with information provided to them by Defendant Cookinham – that Plaintiff was a parolee with a warrantless search waiver on file and that he was residing at (and perhaps selling methamphetamines from) the HWY 23 Home. (ECF Nos. 50-2, p. 2; 50-3, pp. 1-2; 50-4, pp. 1-2). Importantly, as the Court has already explained, the summary judgment record indicates Defendant Cookinham possessed probable cause to believe the HWY 23 Home was Plaintiff's residence on February 17, 2023. Accordingly, the Court finds Plaintiff's Fourth Amendment Claims One and Two against Defendants Mackey, Sanchez, and Abernathy should be dismissed as a matter of law based on the collective knowledge theory espoused in *Edwards, supra.*

## B. Claim Two – Illegal Seizure

Next for consideration is the seizure portion of Plaintiff's Claim Two.[9] Defendants interpret Plaintiff's seizure claim as relating to his handcuffing during the search, and they argue Plaintiff's seizure with handcuffs was legal as they were in possession of reliable (confidential) information that Plaintiff possessed weapons inside the girlfriend's home. (ECF No. 51). In his Complaint, Plaintiff does not really complain or allege any facts related to the seizure other than a passing reference to being handcuffed while the search was conducted. (ECF No. 1, pp. 4-8).[10]

_____

[9] Plaintiff makes no allegations or complaints regarding any seizure in Claim One or Five. (ECF No. 1).

[10] As previously noted, Plaintiff's claim related to his arrest – Claim Three – was dismissed at screening. (ECF No. 17). Additionally, Plaintiff's claims regarding his property (his car specifically) were also dismissed at screening. *Id.* Accordingly, the Court agrees with Defendants

Plaintiff does not make any arguments regarding his handcuffing in his summary judgment pleadings; however, applying a liberal construction of the Complaint, the Court will presume Plaintiff is complaining of his handcuffing during the search of the HWY 23 Home in Claim Two and analyze accordingly.

Defendants are correct that the United States Supreme Court has held that handcuffing a resident of a home during a valid search of the property –when there is an inherently dangerous situation – does not violate the resident's constitutional rights. *See Muehler v Mena*, 544 U.S. 93, 100 (2005). In *Muehler*, the officers served a search warrant on a home to look for weapons and detained the residents of the home in handcuffs while conducting the search. *Id.*

Here, Defendants went to the HWY 23 Home to search the property pursuant to Plaintiff's valid Search Waiver, and with the corroborated confidential information that Plaintiff possessed weapons at the residence. (ECF No. 50-1). Unlike *Mueller,* the officers possessed no search warrant, but the Court nevertheless finds *Muehler* analogous as it has found Defendants were lawfully conducting their search. Further, the Court finds the officers were operating with the statements from the confidential informants that there were weapons present in the HWY 23 Home which constitutes a potentially dangerous situation. *See Crowely v. Benton County, Arkansas,* 2006 WL 3053005, at *4 (W.D. Ark. Oct. 26, 2006) (relying on *Muehler* to conclude officers acted reasonably, and did not violate plaintiff's Fourth Amendment rights, in detaining plaintiffs outside their residence for 30 to 45 minutes, and handcuffing one, while they conducted a warrantless search looking for a shooting suspect).

---

that Plaintiff's handcuffing allegation is the only remaining allegation related to Plaintiff's seizure claim.

There are no disputed facts regarding the handcuffing of Plaintiff, other than Plaintiff's general denial that the confidential informants' statements to Defendant Cookinham ever occurred. However, as explained in detail above, Plaintiff has not provided adequate summary judgment evidence to dispute the existence of the informants' statements. Accordingly, the Court finds no material dispute and no cognizable claim related to Plaintiff's handcuffing during the search of the HWY 23 Home, and Plaintiff's seizure claim should be dismissed as a matter of law.

### C. Claim Five - Conspiracy

In Claim Five, Plaintiff alleged all Defendants conspired to violate his Fourth Amendment rights through their illegal search of the HWY 23 Home. (ECF No. 1, pp. 14-15). Defendants argue Plaintiff has failed to establish any violation of his Fourth Amendment rights and therefore cannot establish a conspiracy to violate his Fourth Amendment rights. (ECF No. 51). The Court agrees the claim must be dismissed.

To state a claim of civil conspiracy pursuant to Section 1983, "a plaintiff must allege that (1) defendants conspired to deprive the plaintiff of [his] constitutional rights; (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." *Tirado v. City of Minneapolis*, 521 F.Supp.3d 833, 844 (D. Minn. 2021) (citing *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008)). With "[t]he threshold requirement for a § 1983 conspiracy claim [being] a deprivation of a constitutional right or privilege ...." *Tirado*, 521 F.Supp.3d at 844 (citing *White*, 519 F.3d at 814). As explained in detail above, Plaintiff's Claims One and Two, alleging Fourth Amendment violations, fail as a matter of law and thus, he cannot meet the threshold requirement for a § 1983 conspiracy claim. *Id.* As his

conspiracy claim is based on the asserted Fourth Amendment claims, his conspiracy Claim Five must also fail as a matter of law.[11]

## V.    CONCLUSION

For these reasons, the undersigned finds and recommends that Defendants' Motion for Summary Judgment (ECF No. 50) be **GRANTED;** that judgment be entered in favor the Defendants and against Plaintiff on each of his claims – Plaintiff's Claims One, Two, and Five – and his Complaint be dismissed with prejudice.

**Referral Status**:  **Referral should be terminated with the filing of this Report and Recommendation.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.**

**RECOMMENDED** this 3rd day of July 2025.

*Christy Comstock*
_____
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE

---

[11] For this reason, the Court need not address each of Plaintiff's arguments regarding the alleged facts supporting the elements of a conspiracy claim.